CITY OF NASHVILLE v. WARD-BELMONT SCHOOL.

Middle Section. May 22, 1928.

J. Washington Moore, J. Carlton Loser and Norman R. Minick, of Nashville, for appellant, City.

Miles P. O'Connor and Littell Rust, of Nashville, for appellee, School.

CROWNOVER, J.  The bill in this cause was filed to collect city taxes for the years 1920 to 1925, inclusive, assessed against a house and lot on Belcourt street and Villa Place in the City of Nashville, owned by the defendant Ward-Belmont School.

The college defended on the ground that the defendant was an institution of learning, and that said property was used exclusively for educational purposes during those years, that it was used as a dormitory for the pupils of said school during the years 1920, 1921, 1922 and 1923, and that thereafter it was occupied by the vice-president, Eustice A. Hail, who was the chief financial officer of the institution and devoted all his time to the management of the finances of the institution, and for these reasons said property was exempt from taxation under the Act of 1907, chapter 602.

Several depositions were taken and the cause was tried by the Chancellor, who was of the opinion that said property was exempt

from taxation under the aforesaid act, and he therefore dismissed the bill. The complainant city excepted, appealed to this court and has assigned six errors, which when summarized, raise three propositions: (1) That the court erred in holding that the property was in reality physically used and actually occupied in educational work for and during the years 1924 and 1925; (2) That the court erred in holding that the defendant was entitled to the exemption for the years 1924 and 1925, because no protest or objection against the making of said assessment was made to the tax equalization board by said college; and (3) The court erred in overruling the petition of the city for an additional finding of fact and for a modification of certain facts found by the court.

The facts necessary to be stated are that the Ward-Belmont School is a private corporation for educational purposes, and was organized in the year 1913 for profit, and is not an eleemosynary corporation organized for general welfare. Since its organization it has been conducted as a high class school for girls. It has acquired the title of many houses and lots in Nashville, most of which are used for educational purposes. Its common and preferred stock is owned by Dr. J. D. Blanton and Eustice A. Hail and their families. It has a corps of about seventy-five teachers and from 1000 to 1200 pupils. J. D. Blanton is the president and Eustice A. Hail is the vice-president and general financial manager of the institution, who handles about $600,000 per annum in the operation of the institution. It requires twelve hours per day for six days in the week of the time of Eustice A. Hail, which practically consumes all said Hail's time as vice-president of the institution. Since 1921 Hail devotes practically all of his time to the affairs of said institution, and is paid a stated salary and is given the use and occupancy of a residence free of rent as a part of his salary.

Said institution purchased the house and lot in question, which is just across the street from the campus, in the year 1917, and used it as a dormitory for the pupils of said institution from that date until the latter part of 1923, when the institution had completed the erection of a new dormitory, which was sufficient to accommodate the boarding students, and thereafter, by agreement, Eustice A. Hail was given the use and occupancy of said building as a part of his salary, and he has occupied it during the years 1924 and 1925. As above stated the Chancellor held that said property was exempt from taxation during the whole of the time, but the city was dissatisfied with his decision as to the years 1924 and 1925, and has appealed and assigned errors as hereinabove stated.

We have carefully reviewed the record and the authorities in this case and are of the opinion that none of the assignments of error is good.

On the first proposition, we think that the property when occupied by the vice-president, who gave all of his time to the institution, is used exclusively for educational purposes for which the institution was created. That portion of section 2 of chapter 602 of the Act of 1907 contained the clause exempting property from taxation, provides:

"All property belonging to any religious, charitable, scientific, or educational institutions, when used exclusively for the purposes for which said institution was created, or is unimproved and yields no income," shall be exempt from taxation.

This section of the act and the clause of the constitution authorizing the passage of such acts were reviewed by the Supreme Court in the case of Ward Seminary v. City Council, 129 Tenn., 412, 167 S. W., 113, and it was there held that the words, "educational institution," should be construed to mean school, seminary, college, or educational establishment, not necessarily a chartered institution, so as to limit the exemption to educational corporations, and that under such act all property, whether owned by a corporation or a private individual, used exclusively for educational purposes, without reference to whether a profit was made therefrom or not, was exempt from taxation.

Several states have passed similar statutes, and have held that a dwelling owned by an educational institution, and used and occupied by the president, general manager, teachers or professors, is actually used and physically occupied for educational purposes, and should therefore be exempt from taxation.

"The principle that the exemption of educational institutions extends only to property used for the purpose of the institution has frequently been applied in the case of endowed colleges and academies. Dormitories and dining halls furnished by a college for the use of its students are clearly exempt, but buildings used in part as a dormitory and dining hall will not be exempt if the part not required for such purposes is used as a hotel. A college or academy may own extensive grounds used for walks, lawns, gardens and the like, for the benefit of its own pupils, which will not be subject to taxation, and the same is true of fields for baseball, football and other athletic sports. A dwelling house occupied by the president of a college, owned and maintained by the college and used by the president for the performance of his official duties is exempt. So also, residences for teachers erected upon or near the college grounds are generally held to be exempt, and, similarly the exemption of a school is not lost because the principal of the school and his family reside in the school building." See 26 R. C. L., 322, sec. 282; Harvard College v. Assessors of Cambridge, 175 Mass., 145, 55 N. E., 844, 48 L. R. A., 547; State v. Johnson, 214 Mo., 656, 113

614

S. W., 1083; 21 L. R. A. (N. S.), 171; Cooley on Taxation, vol. 2, sec. 776; Emerson v. Milton Academy, 70 N. E., 442; Cunningham Winter v. Berea College (Ky.), 147 S. W., 929.

But it is insisted by the city that the foregoing cases all apply to eleemosynary corporations organized for the general welfare, and not to private corporations for profit. We fail to appreciate the distinction, as it was expressly held in the case of Ward Seminary v. City Council, supra, that it was the intention of the legislature to exempt property used in educational work, and that it was confined to property actually used in school work. This same proposition was raised by the city in that case, but the Supreme Court held that it had been the policy of the State for more than thirty years to foster educational institutions, and that the State made no distinction, whether the property was owned by a private educational corporation for profit, or by a corporation organized for general welfare alone; hence we think there is nothing in this contention, and we hold that the occupation and use of the property by the vice-president, who gave all of his time as financial manager of the institution, is exempt from taxation while thus physically occupied; hence this assignment of error must be overruled.

The second proposition, that the defendant was not entitled to the exemption of this property from taxation because it had filed no protest or objection against the making of said assessments before the tax equalization board, is not well made, because the proof shows that the defendant had no notice of the assessments until after they had been actually made, so this assignment of error must be overruled.

Since the passage of chapter 68 of the Acts of 1927, the finding of facts by the Chancellor is not binding on this court, but it is still incumbent on the Chancellor to file written findings of facts as required by Chap. 100 of Acts 1925. The third assignment of error is overruled. It results that all the assignments of error are overruled and the decree of the Chancellor dismissing the bill is affirmed. The cost of the cause, including the cost of appeal is adjudged against appellant and the surety on the appeal bond.

Faw, P. J., and DeWitt, J., concur.