1943—(Jacobus Hall)

THE CITY OF HOBOKEN, PROSECUTOR, v. DIVISION OF TAX APPEALS, DEPARTMENT OF TAXATION AND FINANCE—STATE OF NEW JERSEY, AND STEVENS INSTITUTE OF TECHNOLOGY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

1943—(Tank House No. 1)

THE CITY OF HOBOKEN, PROSECUTOR, v. DIVISION OF TAX APPEALS, DEPARTMENT OF TAXATION AND FINANCE—STATE OF NEW JERSEY, AND STEVENS INSTITUTE OF TECHNOLOGY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

1944—Block 228, 235, 236, 258, 259, Plots 27, 27a, 27b, 27c, 30, 31, 32, 33, 34, 35, 36, 4, 5.

THE CITY OF HOBOKEN, PROSECUTOR, v. DIVISION OF TAX APPEALS, DEPARTMENT OF TAXATION AND FINANCE—STATE OF NEW JERSEY, AND STEVENS INSTITUTE OF TECHNOLOGY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Submitted October 1, 1946—Decided November 18, 1946.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutor, *John J. Fallon.*

For Stevens Institute, *Isadore Haber.*

The opinion of the court was delivered by

BODINE, J. *Case No.* 228 is before the court in order to review the judgment of the Division of Tax Appeals in the

Department of Taxation and Finance of the State of New Jersey, affirming the action of the Hudson County Board of Taxation in cancelling the assessment for taxation levied by the tax department of the City of Hoboken for the year 1943 on property of the Stevens Institute of Technology described on the tax books of the City of Hoboken as Plot 35, Castle Point, upon which is erected a two story building known as Jacobus Hall used on the assessment date as a dormitory. The assessors levied no assessment against the building and allowed, as exempt from taxation, some curtilage, but assessed the balance of the land for $110,000. The Hudson County Board of Taxation canceled the assessment on all the lands in the plot on the ground that it was necessary to the use of the dormitory building. The city appealed to the Department of Taxation and Finance, where the judgment of the Hudson County Board of Taxation was affirmed.

The argument is made that the exemption from taxation of 2.82 acres for the use of Jacobus Hall is more than reasonably required for the use of that building. We do not think so.

The building in question is the center for the social life of the college; not only the resident group of 145 make use of it but about 600 students. It includes a music room; in the basement are squash courts and locker rooms. It seems to be a general utility building for the college and for the meeting of the undergraduate clubs; indeed, certain commencement exercises are held there. The plot of ground is traversed constantly by many students, as well as by guests of the faculty and faculty members. At commencement time there may be in attendance anywhere from 800 to 1,000 persons and on these occasions cars are parked on the lot.

It seems that the exemption was proper, the entire plot being well under the statutory maximum of five acres. The city agrees that the Division of Tax Appeals should have made its own independent determination as to how much land was necessary for a fair use of the dormitory: but the record discloses that such independent determination was made. The city is merely dissatisfied that the arbitrary action of its assessor, in drawing arbitrary lines marking off the land which

to him seemed necessary and leaving out land which to him seemed unnecessary, was not affirmed. '

But upon our examination and a weighing of the testimony before the Division of Tax Appeals, we are satisfied that its findings were correct.

*Case No.* 229, relates to a towing tank research laboratory building. The case brings up the question of exemption for the year 1943. The same procedural steps were taken as in case 228.

Dr. Harvey N. Davis, the president of Stevens Institute of Technology, testified that in addition to his duties at the Institute he had also been a director of the Office of Production Research and Development of the War Production Board in Washington.

The building in question was built in 1942. Previously thereto, a young professor at the Institute had rigged up in the swimming pool a crude mechanism and started experiments. Others became interested in experimenting with models of racing boats. The equipment for these experiments had to be set up at night and taken down again and put away so that the pool could be used by the students during the day. This led to the building of a fully equipped tank for experimental purposes.

A number of problems Dr. Davis testified, useful in the war and navigation, were solved in that tank. Of course, there was a great saving of time for useful experimental purposes in not being obliged to put the models away every day and bring them out after dark.

The work done in the tank was not part of the curriculum but was, it seems to us, a proper function of the college. Colleges must engage in research, as well as in teaching. Because the experiments were in war time, mostly or entirely for the benefit of the government, is no argument against the exemption.

Whether the atomic bomb was or was not of value, nonetheless, research carried on in educational institutions of the country resulting in that achievement has changed the prevailing concepts of chemists. A college faculty must both teach and study.

The evidence satisfies us that the judgment under review was in all respects proper. *Gannon* v. *State Board of Tax Appeals,* 123 *N. J. L.* 450; *Camden County Realty Co.* v. *State Board,* 131 *Id.* 132; *Garfield* v. *State Board, Id.* 364.

*Case No.* 230 is before the court in order to review a judgment of the Division of Tax Appeals for the taxes for the year 1944.

The City of Hoboken, for the year 1944, assessed the property of the Stevens Institute of Technology in the sum of $1,055,900. The institute filed an appeal with the County Board which, after hearings and a view of the property, exempted all save one plot which had been acquired the day before the assessment, and hence was not actually in college use. The city appealed the judgment of the County Board to the Division of Tax Appeals which, after several hearings and a view of the property, upheld the judgment of the County Board.

The proofs show that the Stevens Institute is an eleemosynary institution and as an educational institution has not been operated for profit, but in fact has consistently been operated at a loss year in and year out. The loss has been made up by gifts and contributions by alumni and friends. It performs a work which is countrywide and outstanding in every particular.

The property in question is situate on various streets in Hoboken. The ground is in several levels ascending to an elevation of approximately 100 feet at the Castle. The elevation on Eighth and Hudson Street is 33 feet above mean high water. At Eighth and Castle Point the terrace is 57 feet high. The tennis court property is on several plateaus.

The Institute is compelled to pump its water since the city water pressure is inadequate. It has its own sewer system privately maintained. There are no public improvements; no city mains or city sewers on any part of the property other than those servicing privately owned in the vicinity. The roads are maintained by the Institute. There are approximately 64,000 square feet of roads and driveways. The Institute pays for its garbage removal. Nor is the property policed by the City of Hoboken.

To understand the athletic field property and the William Hall Walker Gymnasium, it is necessary to consider them together and also their use with relation to Palmer Hall, Castle Stevens and Jacobus Hall; the latter was mentioned in the early part of this opinion. The gymnasium is a brick and concrete building and is used for athletic instruction. A course is prescribed by the faculty, to the end that there may be not only mental growth but physical growth, the idea being to produce a sound mind in a sound body. The main floor of the gymnasium contains about 8,000 square feet, has a running track and is used also for some of the commencement exercises and other public functions.

The play field approached from the main floor of the gymnasium is used with the gymnasium for instruction in physical education, for supervised calisthenics and military drills, for individual and team coaching and by all undergraduates for practice in baseball, soccer, handball, lacrosse and other activities of physical education. There are no viewing stands on the field and when commencements are held part of the plot is used as a parking field. The main athletic field is approached by the west exit from the gymnasium and contains about five acres and is used in much the same manner as the other plot mentioned. No admissions are charged for athletic events at these fields.

The athletic fields are related to three other buildings, Jacobus Hall, Palmer Hall and Castle Stevens, and the area is essential for the proper and functional use of these buildings. Jacobus Hall was fully described in the earlier part of this opinion. Back of Jacobus Hall is a space used for the storage of coal for the power plant and for heating of all the buildings.

Castle Stevens was built in 1852 and was the home of the founder of the college. The cafeteria in the basement of the building has a capacity at a single sitting of 300 persons. There were two sittings for each meal. There were 1,575 meals served each day during the year in question.

On the second floor there is a dining hall seating fifty-five. During the years 1943 and 1944, 175 meals a day were served

there. The upper floors are used as a dormitory. Ordinarily accommodating thirty students, but due to the more intensive use of the building necessary in the years 1943-1944, there were ninety regularly enrolled students living in the building.

It is necessary that there be access to this building from all parts of the campus, not only because of the number of students using it but because of the necessity of bringing food for preparation and service.

Palmer Hall is strictly a dormitory building. There are six entrances. Bernegau House, a dormitory building, is another property which had heretofore been exempt. Hoxie House, the president's house, and several other houses are used for faculty residences. The president's house is laid out not only as his residence but as a place for the entertainment of visitors to the college and on occasions for various group meetings; the trustees meet there and also the executive committee of the board. There are afternoon and evening meetings for members of the alumni and the faculty and various faculty committees. It is also used for conference with student groups, authorized committees, student council and honorary fraternities and a vast number of people who make calls to confer with the president of the college.

The grounds around the building are essential to give access to it, both for service at the east end and for guests, and others, at the main entrance.

The Alexander House and the Wittpenn House are used for the residence of certain of the faculty and their families. Garages are also provided. Another building, a small cottage, was used as a residence for a faculty member. A tennis club building seems as necessary for athletic training as the gymnasium and the Gate House, which is used as a residence by a member of the faculty, should be exempt.

The City of Hoboken started an innovation in taxing the property and since, as before noted, the services rendered by the municipality are so trifling the change of purpose seems hard to understand, except for the ever growing desire of cities to bring more and more ratables within the field of taxation.

We have no hesitancy in finding that Palmer Hall, Castle

Stevens and Jacobus Hall, as college dormitories, are exempt, as well as the lands upon which they stand necessary for their enjoyment, as found by the State Board.

We also find that the Walker Gymnasium and the athletic fields, to the extent allowed by the State Board, were proper subjects of exemption.

The athletic fields are in an entirely different class from Rutgers College stadium. *Rutgers College* v. *Piscataway Township,* 134 *N. J. L.* 85.

The president's residence is definitely exempt. *Piscataway Township* v. *State Board,* 129 *N. J. L.* 261; 131 *Id.* 158.

The proofs bring the cottage and Alexander and Wittpenn Houses within the rule laid down in *State* v. *Ross,* 24 *N. J. L.* 497.

The garages and store houses used in connection with the maintenance of the roads and grounds of the Institute are essential to its operation; the same applies to the garage tool house..

We think the Institute made out its claim for exemption under the statute, *R. S.* 54:4–3.6, and the finding of the State Board is in all respects proper.

All other questions of fact and law have been considered carefully but require no further discussion, in that they fall within the foregoing reasoning or possess so little merit that they require no further discussion.

The writs will be dismissed, with costs.