[Civ. No. 16961. First Dist., Div. Two. July 16, 1957.]

THE CHURCH DIVINITY SCHOOL OF THE PACIFIC (a Corporation), Appellant, v. COUNTY OF ALAMEDA et al., Respondents.

[Civ. No. 17026. First Dist., Div. Two. July 16, 1957.]

BERKELEY BAPTIST DIVINITY SCHOOL (a Corporation), Appellant, v. CITY OF BERKELEY et al., Respondents.

[Civ. No. 17030. First Dist., Div. Two. July 16, 1957.]

THE PACIFIC SCHOOL OF RELIGION (a Corporation), Appellant, v. CITY OF BERKELEY et al., Respondents.

Ridley Stone, Gaylord & Gaylord, Dudley H. Nebeker, Charles R. Hoge and Richard J. Moore for Appellants.

Musick, Peeler & Garrett, James E. Ludlam and Theodore A. McCabe, Jr., as Amici Curiae on behalf of Appellants.

J. F. Coakley, District Attorney (Alameda), Frank D. Parker, Assistant District Attorney, James E. Jefferis, Deputy District Attorney, Fred C. Hutchinson and Robert T. Anderson for Respondents.

KAUFMAN, P. J.—In these actions, consolidated upon appeal, brought to recover property taxes paid under protest to the city of Berkeley and county of Alameda for the year 1953-1954, by the appellants, graduate colleges of theology, the trial court found and concluded that the following properties did not meet the requirements prescribed by section 203 of the Revenue and Taxation Code for the ''collegiate

exemption'' authorized by section 1a of article XIII of the state Constitution: A student parking lot and four single family residences occupied rent free by faculty members, owned by appellant Church Divinity School of the Pacific; four apartment houses occupied by married students and their families owned by appellant Berkeley Baptist Divinity School; two apartment houses occupied by faculty members and married students owned by appellant Pacific School of Religion.

The rentals charged by the various schools for these facilities were below those charged for comparable accommodations in the area. The trial court found and concluded that the following were entitled to the exemption: a dormitory owned by the Pacific School of Religion, occupied by seven single students and two married students; a single students' dormitory owned by the Berkeley Baptist Divinity School, and a one-family residence occupied rent free by the President of the Berkeley Baptist Divinity School. No appeal is taken as to these properties.

The only issue on appeal is whether the properties involved were entitled to the tax exemption accorded to property ''used exclusively for purposes of education'' within the meaning of section 1a of article XIII of the state Constitution. It is not questioned that the appellants are duly organized California nonprofit corporations and educational institutions of collegiate grade who have met the other requirements of the constitutional provision and the statute for properties other than those in dispute here, or that the appellants have complied with the proper procedures for claiming a refund of property taxes. Section 1a of article XIII of the state Constitution reads as follows:

''Any educational institution of collegiate grade, within the State of California, not conducted for profit, shall hold exempt from taxation its buildings and equipment, its grounds within which its buildings are located, not exceeding 100 acres in area, its securities and income used exclusively for the purposes of education.

''The exemption granted by this section applies to and includes a building in the course of construction on or after the first Monday of March, 1950, if the same is intended when completed to be used exclusively for the purposes of education. (Added Nov. 3, 1914; amended Nov. 4, 1952.)''

Section 203 of the Revenue and Taxation Code reads as follows:

"The college exemption is as specified in section 1a of Article XIII of the Constitution.

"An educational institution of collegiate grade is an institution incorporated as a college or seminary of learning under the laws of this State, which requires for regular admission the completion of a four-year high school course or its equivalent, and confers upon its graduates at least one academic or professional degree, based on a course of at least four years in liberal arts and sciences, or on a course of at least three years in professional studies, such as law, theology, education, medicine, dentistry, engineering, veterinary medicine, pharmacy, architecture, fine arts, commerce, or journalism.

"An educational institution of collegiate grade is not conducted for profit when it is conducted exclusively for scientific or educational purposes and no part of its net income inures to the benefit of any private person." (Stats. 1939, ch. 154, p. 1280, § 203.)

The courts of this state have not been called upon before to interpret the meaning of property "used exclusively for the purpose of education," as used in the above constitutional provision. All the previous constructions of article XIII, section 1a, have been concerned with the "educational institutions of collegiate grade" requirement. (*Pasadena University* v. *Los Angeles County,* 190 Cal. 786 [214 P. 868]; 2 Ops. Atty. Gen. 18; *Lutheran Hospital Soc.* v. *County of Los Angeles,* 25 Cal.2d 254 [153 P.2d 341]; *California Inst. of Technology* v. *Johnson,* 55 Cal.App.2d 856 [132 P.2d 61]; *Pasadena etc. Assn.* v. *County of Los Angeles,* 69 Cal. App.2d 611 [159 P.2d 679]; *Estate of Halm,* 196 Cal. 778 [239 P. 307]; *Estate of Davis,* 74 Cal.App.2d 357 [168 P.2d 789]; *University of So. Calif.* v. *Robbins,* 1 Cal.App.2d 523 [37 P.2d 163], cert. den. 295 U.S. 738 [55 S.Ct. 650, 79 L.Ed. 1685].) In 2 Attorney General Opinions 18, the tax exemption granted by section 1a was extended to the property of a nonprofit college, the major portion of which was used by Naval Pre-Flight Program. In *Pasadena etc. Assn.* v. *County of Los Angeles,* 69 Cal.App.2d 611 [159 P.2d 679], it was held that a school of drama met the requirements for the exemption under the constitutional provision and Revenue and Taxation Code, section 203.

There have, however, been numerous interpretations of the "used exclusively" requirement of the welfare and religious exemptions authorized by section 1c of article XIII of

the state Constitution and Revenue and Taxation Code, section 214. It must first be determined whether the educational institutions here involved are in the same category as other private property owners who obtain their exemptions as acts of grace from the sovereign state or whether as educational institutions they fall within the special category of exceptions to the rule that all property must bear equally the costs of government, because of the highly important and semipublic function of education which they perform. The former rule of strict construction of exemption statutes has been followed in this state as to the welfare and religious exemptions. (*Watchtower B. & T. Soc.* v. *County of Los Angeles*, 30 Cal.2d 426 [182 P.2d 178]; *Goodwill Industries* v. *County of Los Angeles*, 117 Cal.App.2d 19 [254 P.2d 877].) Appellants and respondents rely on *Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045], where in construing the welfare exemption, the court said at page 734 that: "it is immaterial that the institutions . . . [who seek the exemption] may contribute to the public welfare and serve the interests of the state, for they, like other private owners of property, have the burden of showing that they clearly come within the terms of the exemption." The court went on to add that the construction must still be a reasonable one with due regard for the ordinary meaning of the language employed and the object sought to be accomplished thereby. (*Supra* at p. 735.) In the very recent case of *Lundberg* v. *County of Alameda*, 46 Cal.2d 644 [298 P.2d 1], in holding that the word "charitable" of article XIII, section 1c, could be regarded to apply to educational purposes in order to grant the exemption to schools of less than collegiate grade owned by religious organizations, our Supreme Court appears to have rejected the rule of strict construction of tax exemption statutes. Either under the broader rule of the above case or under the "strict but reasonable" rule of the Cedars of Lebanon Hospital case, however, we think the properties in dispute here were used exclusively for the purposes of education within the meaning of section 1a of article XIII.

In determining what constitutes an exclusive use for education, it is appropriate first to note generally the nature of an "educational institution of collegiate grade" or "college," and to examine the legislative history of the exemption. The best definition is found in the case of *Yale University* v. *Town of New Haven* (1899), 71 Conn. 316 [42 A. 87, 43

L.R.A. 490], in which after reviewing the history of the term from the year 1200, the court said at page 91 [42 A.]: "The settled meaning of 'college' as a building or group of buildings in which scholars are housed, fed, instructed and governed under college discipline, while qualifying for their university degree, is now attacked. . . . This meaning has been attached to the English word for 800 years; it was the only meaning known at the time our first American colleges were founded;" the constitutional provision and statute were enacted in 1914 and 1915. Respondents relying on a dictum in *California Inst. of Technology* v. *Johnson,* 55 Cal.App.2d 856 at page 860 [132 P.2d 61] to the effect that article XIII, section 1a, was intended to give tax relief to colleges not provided by special constitutional sections, argue that the language must be given a narrow construction so as to exclude the properties here in dispute, as sections 11, 12, 13 and 15 of article IX of the state Constitution grant tax exemptions to "property belonging to" certain institutions without regard to the use made of the property. Sections 11, 12 and 13 of article IX were adopted before the general exemption of article XIII, section 1a. The piecemeal approach of the article IX sections was necessitated by *People* v. *McCreery* (1868), 34 Cal. 432, which held that the Legislature had no power to exempt private property from taxation, and the difficulty of amending the state Constitution. From the beginning, the Legislatures of this state have encouraged private educational and philanthropic institutions through the medium of tax exemption. Buildings and personal property used by any literary, benevolent, charitable and scientific institution was declared to be exempt by California Statutes, 1850, chapter 52, pages 135-136. In 1852 this general exemption was repealed and replaced by the following provision: "3d. Colleges, school houses and other buildings for the purposes of education, with their furniture, library and all other equipments, and the lots thereto appurtenant and used therewith so long as the same shall be used for that purpose." (Laws of California, ch. 127 [Garfielde 1853].) In 1857 the property of educational institutions was exempted only when no rent or profit was derived. (Cal. Stats. 1857, p. 326.) One of the purposes of the 1914 amendment was to treat all colleges in the same manner and abolish discrimination in favor of certain institutions. As pointed out by our Supreme Court in *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, at page 635 [268 P.2d 723]: ". . . A constitution is intended

to meet and be applied to any conditions and circumstances as they arise in the course of the progress of the community. The terms and provisions of constitutions are constantly expanded and enlarged by construction to meet the advancing affairs of men. While the powers granted thereby do not change, they do apply in different periods to all things to which they are in their nature applicable.'' To adopt the respondents' narrow view of ''property exclusively used for purposes of education'' would appear to us to contravene the history of the exemption and to nullify the intent of the Legislature to encourage and foster and protect educational institutions.

Our Supreme Court said in *Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729 at page 736 [221 P.2d 31, 15 A.L.R.2d 1045] : ''It thus appears that under the rule of strict but reasonable construction, the phrase 'property used exclusively for . . . hospital . . . purposes' should be held to include any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete modern hospital.'' ■ By the compelling analogy of that situation to the one before us, we conclude that property ''used exclusively for . . . purposes of education'' includes any facilities which are reasonably necessary for the fulfillment of a generally recognized function of a complete modern college. The very recent case of *House of Rest* v. *County of Los Angeles*, 151 Cal.App.2d 523 [312 P.2d 392], in which the welfare tax exemption was extended to a property used to provide low cost housing for missionaries and their families who were on furlough, is also in accord with our view here. Respondents argue that the married students and faculty residences and the parking lot of the appellants are not used exclusively for purposes of education as they exist for the convenience of the users and are not reasonably necessary for the operation of a modern college. As to the first point, it could as well be argued that hospitals and their appurtenant properties are not entitled to a tax exemption because they really exist for the convenience of patients. As to the second point, it appears to be asking this court to adopt the narrow test of indispensability to the properties here in dispute. It was admitted on trial by all of the appellants that they could operate without the dis-

puted properties. The issue, however, has been settled, as in granting the welfare exemption to a tennis court, in *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, where the court said at page 745 [221 P.2d 31, 15 A.L.R.2d 1045] : "Perhaps it may not be said that such recreational facility, in its use by either patients or essential personnel, is indispensable to the accomplishment of hospital purposes, but absolute indispensability does not commend itself as an appropriate test, and it finds no support in the authorities."

Having thus declared in general terms the test we have used in determining the question of when property is being used exclusively for purposes of education within the meaning of the constitutional provision, we shall proceed to apply that test to the particular properties which are the subject of this dispute.

The first question presented is whether the use of certain property by appellant, Church Divinity School of the Pacific. as a parking lot for students, and some part-time faculty and staff members constitutes a use exclusively for the purposes of education and so brings the property within the scope of the collegiate tax exemption. This parking lot, located on the corner of Euclid Avenue and Ridge Road in Berkeley is contiguous to the campus of the Church Divinity School which is located in the proximity of the University of California, two other educational institutions, a neighborhood business area, and closely built up residence areas. The complaint alleges and the answer does not deny that parking facilities in this vicinity are inadequate. The faculty parking lot of appellant was not assessed. The importance and significance of adequate parking facilities has been recognized in this State in other respects. (*City of Whittier* v. *Dixon,* 24 Cal.2d 664 [151 P.2d 5, 153 A.L.R. 956] ; *City & County of San Francisco* v. *Ross,* 44 Cal.2d 52 [279 P.2d 529] ; *Alexander* v. *Mitchell,* 119 Cal. App.2d 816 [260 P.2d 261].) The only California case relating to the exemption of parking lots, *Immanuel Presbyterian Church* v. *Payne,* 90 Cal.App. 176 [265 P. 547], was concerned with the construction of section 1½ of article XIII of the state Constitution which is as follows:

"All buildings, and so much of the real property on which they are situated as may be required for the convenient use and occupation of said buildings, when the same are used solely and exclusively for religious worship, or, in the case of a building in the course of erection, the same is intended to be

used solely and exclusively for religious worship, shall be free from taxation; provided, that no building so used which may be rented for religious purposes and rent received by the owner therefor, shall be exempt from taxation. (Added Nov. 6, 1900; amended Nov. 4, 1952.)''

The appellate court upheld the trial court's finding that the parking lot was necessary and required for the convenient use and occupation of the church, within the terms of the Constitution, and the Supreme Court subsequently denied a hearing.

Respondents argue that the lot cannot qualify because the students were charged $1.50 a month for the use of the lot; because at the assessment date five to eight of the available 45 spaces were used by a few neighboring businessmen as gratutious licensees, and because the lot was for the convenience of the students and staff. Since the assessment date, all of the spaces have been used by students and staff, and the capacity of the lot has been expanded by closing one entrance. The evidence at the trial further disclosed that the parking lot was acquired by the appellant after its investigation of the parking needs of its increased number of students, and the governing body of the school had determined that highest priority be given to off street parking in the development of the school. It also appeared that the charge made was a minimum one and that the lot was operated at a loss. We do not think any of the contentions of the respondents as to the parking lot are meritorious. One of the concurring opinions in the Cedars of Lebanon case, *supra,* indicated at page 751 that, ''. . . the determination of necessity by the owners and operators should be given proper weight.'' As pointed out in *Y.M.C.A.* v. *County of Los Angeles,* 35 Cal.2d 760 at page 770 [221 P.2d 47], the fact of a minimal charge would not operate to destroy an exemption otherwise available. In a somewhat similar case, in which, however, a small charge was made for the use by neighbors and under a statute providing exemption only for property of ''educational . . . institutions . . . while occupied by them solely for the purpose for which they were incorporated . . . ,'' a parking lot was held tax exempt (*Webb Academy* v. *City of Grand Rapids* (1920), 209 Mich. 523 [177 N.W. 290]). Authorities in other jurisdictions, under slightly different statutory provisions, also support our view here, *Congregation B'Nai Yisroel* v. *Township of Millburn* (1955), 35 N.J. Super. 67 [113 A.2d 182]; Minnesota Attorney General, Annual Report, 437 (1942), al-

though there is also some contrary authority, (*Congregational Union* v. *Zangerle* (1949), 138 Ohio St. 246 [34 N.E.2d 201]). As to the temporary use by a few gratuitous licensees of the excess space in the parking lot, it should be noted that the presence of gratuitous licensees and visitors on the property of schools and hospitals has never been held to affect the tax exempt status of such institutions. ▮ The evidence as to the field work done by appellants' students within a radius of as much as a hundred miles from the school, as well as the other facts referred to above, adequately disposes of respondents' third contention that the parking lot was not reasonably necessary to the proper functioning of the appellant. Nor can we agree with the statement of the trial court in its memorandum opinion, "If the parking area were a portion of a larger parcel and constituted incidental space between buildings it might well be exempt. . . ."

▮ The next question presented is whether the use of certain properties by appellant, Church Divinity School of the Pacific, to provide rent free residences for its faculty members, constitutes a use exclusively for purposes of education under the test set forth above, and so brings the property within the scope of the exemption. In this connection it should be noted that the trial court allowed the tax exemption to a one family residence occupied rent free by the president of the appellant, Berkeley Baptist Divinity School. At the assessment date of appellant's six faculty members, one owned his home, one who was unmarried was supplied with a rented apartment, and the remaining four were supplied with the four single family residences in question here. In the case of *Serra Retreat* v. *County of Los Angeles*, 35 Cal.2d 755 [221 P.2d 59], decided the same day as the Cedars of Lebanon Hospital case, *supra*, the court held that property used to house priests and lay brothers, as well as visitors and retreatants was entitled to the welfare exemption of article XIII, section 1c. The court relied on its holding in the Cedars of Lebanon case that property used to house nurses, interns and other essential personnel was entitled to the exemption and said at page 758: "The integrated activities [of an institution] as a whole must be examined in determining the tax status of property for the welfare exemption." On the same basis, the exemption was granted to the property used to house the personnel of a nonprofit corporation which operated a home for elderly persons, in *Fredericka Home for the Aged* v. *County of San Diego*, 35 Cal.2d 789 [221 P.2d 68]. Respondent argues that there

is in the instant case not the same "institutional necessity" for the presence of faculty members on or near the schools involved as in the case of a hospital or old people's home where services must be maintained for 24 hours a day. However, in these cases the court considered the problem of the nonavailability of personnel if these living facilities were not made available. In the instant case evidence was presented that in the competitive market for good faculty it would be difficult for the appellant to obtain competent faculty members without the provision of such facilities; and that it was customary in other Episcopal seminaries to provide rent free housing as a part of the contract of employment for faculty members. The evidence also indicated that the faculty members of the appellant, aside from the usual study and research, also conducted tutorial instruction and student meetings in their homes. We think that in order to efficiently conduct and supervise a modern college, a competent faculty is an essential part of the whole and to obtain this objective they must be located in or near its grounds. This view has been followed and faculty residences held exempt in many other jurisdictions (*Clarkson Memorial College* v. *Haggett*, 77 N.Y.S.2d 182; affd. 274 App.Div. 732 [87 N.Y.S.2d 491]; affd. without op. (1948) 300 N.Y. 595 [89 N.E.2d 882]). The court in holding faculty residences exempt said at 77 N.Y.S.2d 188:

"A college with students but no faculty is much more of an anomaly than one with a faculty but no students. In our conception of the term, a faculty and student body, for all practical considerations, are necessarily co-existent if there is to be a college. Of old, it was said of the revered president of Williams College that Mark Hopkins on one end of a log and a student on the other end constituted a college. Such institutions early learned that a student must live somewhere other than on the end of a log. Nor is the other end a suitable residence for the teacher, particularly in northern New York. In all fairness, we may take notice of the fact that colleges will find it difficult to obtain teachers unless they can provide or find living quarters for them." (*Elder* v. *Trustees of Atlanta University* (1942), 194 Ga. 716 [22 S.E.2d 515, 143 A.L.R. 268]; *City of Nashville* v. *Ward Belmont School* (1928), 7 Tenn.App. 610; Attorney General of Michigan, Biennial Report 1929-1930, 1944, 1946-1947; *Phillips Academy* v. *Andover*, 175 Mass. 118 [55 N.E. 841, 48 L.R.A. 550]; *State* v. *Carleton College*, 154 Minn. 280 [191 N.W. 400]; *Rettew* v. *St. Patrick's Roman Catholic*

*Church* (1902), 4 Penn. (Del.) 593 [58 A. 828], in which the custom of providing residences for faculty members who were clergymen or members of a religious order was considered as a relevant factor; *Midwest Bible etc. Institute* v. *Sestric* (1953), 364 Mo. 167 [260 S.W.2d 25] in which the extent of school work done in faculty residences was considered as a relevant factor, although in *New Canaan Country School, Inc.* v. *Town of New Canaan* (1952), 138 Conn. 347 [84 A.2d 691], under an exemption similar to that of article XIII, section 1a, it was held that two houses used by a day school solely as living quarters for faculty members were not exempt as used for other than exclusive school purposes, even though there was a housing shortage and the school had to provide housing to obtain faculty members, as the housing shortage was irrelevant to the test of the statute.) The former view commends itself to us here as in accord with the Immanuel Church case and the welfare exemption case cited above.

■ The final question presented is whether the properties of appellants Berkeley Baptist Divinity School and Pacific School of Religion used for the housing of married students and their families is a use exclusively for the purposes of education and brings these properties within the exemption. As pointed out by the quotation from *Yale University* v. *Town of New Haven, supra,* living quarters for students have long been considered an essential and necessary part of a college. Respondents do not dispute the trial court's determination that the housing facilities for single students are entitled to the exemption. It is argued that a distinction should be made because the facilities for single students are ''dormitories'' while the properties in dispute here are six apartment houses. Neither this nor any other appears to us a reasonable basis for distinguishing between single and married students. Nor can it be argued that because the wives and children of married students also occupy the premises, the ''exclusive use'' was destroyed. In *State* ex rel. *Spillers* v. *Johnston* (1908), 214 Mo. 656 [113 S.W. 1083, 1086, 21 L.R.A.N.S. 171], the Supreme Court in considering a similar contention as to the family of a headmaster, said such a construction would ''make the law absurd and harsh.'' A recent survey made by our own Department of Education indicates that our state colleges like state colleges in 43 out of 48 states provide housing for married students. As pointed out in our discussion above, living facilities for nursing

students and retreatants were held entitled to welfare exemption in the Cedars of Lebanon and Serra Retreat cases, *supra*. In *Y.M.C.A.* v. *County of Los Angeles* (1950), 35 Cal.2d 760 [221 P.2d 47], it was held that dormitory accommodations provided for the public by the Y.M.C.A. were entitled to the welfare exemption. Respondents attempt to distinguish that case on the grounds that one of the primary purposes for which the Y.M.C.A. was organized was to furnish clean dormitories at modest cost to young men. We do not think that such was the reasoning of the court, as such a purpose in and of itself would not be sufficient to bring the facilities within the welfare exemption. The court indicated that the furnishing of such facilities was reasonably necessary for the accomplishment of the Y.M.C.A.'s primary purpose of fostering good citizenship and inculcating Christian ideals and character. We think the argument is even more compelling here and that the trial court erred in its finding that the facilities for married students are not reasonably necessary for the accomplishment of the educational purposes of the appellants. While we have been unable to find a case precisely in point, our view finds support in many other jurisdictions. (*Yale University* v. *Town of New Haven* (1899), 71 Conn. 316 [42 A. 89, 43 L.R.A. 490]; *Chicago* v. *University of Chicago* (1907), 228 Ill. 605 [81 N.E. 1138, 10 Ann.Cas. 669]; *In re Syracuse University* (1925), 124 Misc. 788 [209 N.Y.S. 329], affd. 214 App.Div. 375 [212 N.Y.S. 253]; *Hoboken* v. *Division of Tax Appeals* (1946), 134 N.J.L. 594 [49 A.2d 587]; *Albuquerque Alumnae Assn.* v. *Tierney* (1933), 37 N.M. 156 [20 P.2d 267]; *People* ex rel. *Hesterman* v. *North Central College* (1929), 336 Ill. 263 [168 N.E. 269]; *People* ex rel. *Goodman* v. *University of Illinois Foundation* (1944), 338 Ill. 363 [58 N.E.2d 33].)

We therefore conclude that the trial court should have found that all of the properties in dispute here were entitled to the exemption from the taxes levied and collected by the respondents. In view of the foregoing it is not necessary to discuss the other contentions raised by appellants or respondents.

Judgments reversed with directions to enter judgment in favor of appellants as prayed for.

Dooling, J., and Draper, J., concurred.