J. Vincent Keogh, J.
This is a proceeding brought by Pratt Institute to review the determination of the Tax Commissioners of the City of New York with respect to the assessment for *59 fiscal year 1957-1958 of' Lot 25, block 1922, section 7 on the tax map of the County of Kings. Lot 25 contains 27 single-family residences which are assessed at a total of $165,000. The petitioner applied for a reduction of the assessed valuation by $134,440.40 for the asserted reason that 22 of the 27 residences are used for educational purposes and are thus exempt from taxation.
The respondents concede that petitioner, Pratt Institute, was organized for exempt purposes as specified in subdivision 6 of section 4 of the Tax Law, but denies that the 22 residences are used for educational purposes and assert that any right to exemption in any event has been affected by petitioner’s failure to make any application for exemption during the 50 odd years that the buildings have been in existence and by the petitioner’s consistent admission in all its prior exemption applications on other properties that the subject property was held for ordinary business or investment purposes.
Pratt Institute is an educational institute, incorporated on May 19, 1887 by a special act of the Legislature. Prior to 1954 the institute had no integrated campus. Its main building was located on Byerson Street between Willoughby and De Kalb Avenues in Brooklyn, New York. It also owned several buildings used for classrooms and numerous buildings including the 27 single-family residences used as homes for faculty, administrative staff and tenants not associated with the institute. In 1954, the institute purchased from the City of New York in a Title I proceeding property comprising five square blocks adjacent to property owned by the institute, which is now in the process of converting this area into an integrated university campus. It has demolished all buildings acquired from the city and many buildings theretofore owned by the institute and used as residences by faculty members and others. The remaining 27 residences are contained in this area and are part of the new campus. Seventeen of these residences were occupied by faculty members and their families; three were occupied by the superintendent of buildings, the assistant plant engineer and the custodian of the institute and their families; two were occupied by retired faculty members; five were occupied by widows of faculty members and statutory tenants having no connection with the institute but against whom final orders of eviction have been obtained. As to the latter five residences no claim is made by the institute to any right to exemption from tax for the taxable year. The institute has been receiving between $77.50 and $95 per month as rentals for each of the said dwellings.
*60 In People ex rel. Clarkson Mem. Coll. v. Haggett (191 Misc. 621, affd. 274 App. Div. 732, affd. 300 N. Y. 595), the court, in an analogous situation as the one at bar, decided that college-owned buildings rented by the college to faculty members or administrators are exempt from taxation. The lower court indicating its reasons for its conclusions, said (pp. 626-627): can find no justification for making a distinction between a dormitory, either simple or elaborate, in which students may room at a stated rental, or a dining hall, in which they may buy their meals, on the one hand, and on the other, a dwelling or an apartment in which one of their teachers may live, either alone or in common with his family, eating, sleeping and, of course, performing necessary out of class tasks, even though, in it, as a private residence, he might, in the ultimate, choose to assert his rights of castle. * * * It is sheer nonsense to assume that the educational process is not progressing in the residences of the teaching staff. Preparations have to be made for recitations, lectures and examinations and duties consequent thereto, to say nothing of meetings with the students, either singly or in groups. Students engage in educational activities in their rooms; teachers do the same in their homes.”
Respondents seek to distinguish the Clarkson case from the factual situation presented here, claiming that the exemption there was ‘ ‘ under unusual and emergent circumstances shown by the evidence.” However, the Special Term in the Clarkson case stated (pp. 627-628): “The indicated administrative policy of the State, in recognizing exemptions of teachers’ and administrators’ residences when the same are a part of an integrated and articulated educational system, has ample judicial precedent in this State. We find ourselves a long distance from a literal application of the word ‘ exclusively ’ in its application to the uses of property of a qualified educational institution. I believe that, in the light of a proper and reasonable interpretation, the policy above stated should receive judicial sanction.”
In Matter of New York Univ. v. State Rent Comm. (304 N. Y. 124) the significance of the affirmance by the Court of Appeals in the Clarkson case becomes apparent. There it is said (pp. 127-128): “ this court has held in People ex rel. Clarkson Memorial Coll. v. Haggett, 300 N. Y. 595, that college-owned buildings rented by the college to faculty members are exempt from realty taxation as being ‘ used exclusively for carrying out ’ one of the purposes of the owning corporation [Tax Law, § 4, subd. 6].”
*61 In a dissenting opinion, Desmond, J., refers to “ New York’s ancient, liberal tax exemption policies for educational institutions ” (Matter of Semple School for Girls v. Boyland, 308 N. Y. 382, 395).
Court decisions abound with statements of the reasons underlying tax exemptions. One of the best such expressions is Justice Imbib’s opinion at Special Term (191 Misc. 621, 624) in the Clarkson case (supra): “ Education is declared to be a function of the State. The State may, and does, provide many of the educational processes. It also may, and does, delegate its function in that respect to private corporations under suitable regulations. In such instances, real property of the delegatee, used for the purposes of its charter, is, in fact, devoted to a public purpose and thereby becomes quasi-public in nature. Nontaxation of public buildings and properties is not an act of grace but is a basic principle of our law; it is the rule and not the exception. Thus, school and college properties may be said to receive their rights of tax exemption, not as acts of grace from the sovereign, nor as personal exceptions to the rule that all real property bear its share of the cost of government, but both upon the principle of nontaxation of public places and as a quid pro quo for the assumption of a portion of the function of the State. Such a situation calls for a reasonable construction of the exemptive statute, ‘ so as to give full effect to the policy declared ’. (Yale University v. Town of New Haven, 71 Conn. 316, 333; People ex rel. Trustees of Mt. Pleasant Academy v. Mezger [98 App. Div. 237, affd. 181 N. Y. 511]; St. Barbara's R. C. Church v. City of New York, 243 App. Div. 371.) ”
The petitioner’s failure to make any application for exemption in previous years with respect to the properties in question does not affect any present rights to exemption (Masters School v. Town of Greenburgh, 206 Misc. 109; Cruger v. Dougherty, 43 N. Y. 107; People ex rel. Woodlawn Cemetery v. Chambers, 91 N. Y. S. 2d 774).
Accordingly, an order may be entered providing that all of the assessments against the 22 residences are illegal and void, directing that they be stricken from the roll, for cancellation of taxes against such properties and declaring the same exempt from taxation.