Belknap,
No. 4836.

APPALACHIAN MOUNTAIN CLUB *v.* MEREDITH.

Argued June 7, 1960.

Decided June 30, 1960.

Reargued September 7, 1960.

Former Result Affirmed October 4, 1960.

8

*McLane, Carleton, Graf, Greene & Brown,* and *Jack B. Middleton* (*Mr. Middleton* orally), for the plaintiff.

*John H. Ramsey* and *Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the defendant.

DUNCAN, J.   By statute the personal property of religious, educational and charitable societies locally incorporated or organized, and their real estate owned and occupied (RSA 72:23), or owned, occupied and used (Laws 1957, *c.* 202, *s.* 2) by them for their charitable purposes were tax exempt for the tax years in question, provided none of the income or profits of their business was used or appropriated for other than the charities they administered. Since the 1957 amendment (Laws 1957, *supra*) took effect on April 1, 1958, the petitions relating to the years 1956 and 1957 are governed by the statute before amendment, and the petition relating to the year 1958 by the amended statute.

It may be assumed that the plaintiff is neither a religious nor an educational society under either statute, and that it "may be exempted from taxation only as it is shown to be a public charity of another character." *Young Women's Christian Ass'n* v. *Portsmouth,* 89 N. H. 40, 41. "But its services in the fields of . . . education have evidentiary value to show its proper classification as a charitable organization within the act.   They are indicative of an enterprise not undertaken as a commercial venture, with a money-profit motive, or as a group devoted to its own social enjoyment." *Id.* While the plaintiff's membership is subject to a reasonable measure of control designed to further accomplishment of its objects, the public is the beneficiary of the great preponderance of its activities, and for all practical purposes its membership is also open to the public. See *Holt* v. *Antrim,* 64 N. H. 284, 286; *Chung Mee* v. *Healy,* 86 N. H. 483, 484.   As its brief points out, its activities fall generally into five broad categories: exploration, education, conservation, public safety and furtherance of outdoor life.   The plaintiff's qualifications as a charitable organization within the meaning of the statute, both before and after amendment, are not open to serious question. *Young Women's Christian Ass'n* v. *Portsmouth, supra; Portsmouth Historical Society* v. *Portsmouth,* 89 N. H 283; *Greater Lowell Girl Scout Council* v. *Pelham,* 100 N. H. 24.   *Cf. Society of Cincinnati* v. *Exeter,* 92 N. H. 348, 356.

While the plaintiff's eligibility as a "charitable society" or "organization" is to be determined according to its activities within the state considered as a whole, its right that particular items of its real or personal property shall be exempt from taxation, must under the applicable statutes be determined on a "town-by-town" basis according to the use made of them. See *Trustees &c. Academy* v. *Exeter*, 90 N. H. 472, 506; 92 N. H. 473.

The defendant contends that because of the large proportion of the plaintiff's membership which resides in Massachusetts, in "actual practice . . . the true purpose of the plaintiff . . . is primarily to enable selected residents of Massachusetts to enjoy the advantages of organized out door recreation in New Hampshire."

The record appears to us not to support this statement. The question is of importance for the years 1956 and 1957 in particular because of statutory provisions effective during those years (but repealed by Laws 1957, c. 202, s. 3) that "no such . . . corporations shall be entitled to . . . exemption if organized or incorporated for the principal purpose of benefiting persons who are not residents of New Hampshire or if in fact conducted or operated principally for the benefit of" such persons. Laws 1955, c. 157, s. 1.

As previously noted, the principal beneficiary of the plaintiff's activities is the public, and not the plaintiff's members. Its stated corporate purpose, and the manner in which it is in fact carried out, neither purport to be, nor in practice are designed primarily to benefit nonresident members of the public. The test to be applied is not whether nonresidents are in fact the principal beneficiaries, but whether the corporation is in fact "operated principally for" their benefit. If in fact larger numbers of nonresidents than residents utilize the services and facilities afforded by the plaintiff's activities in general, this results from the circumstance that more interested nonresidents than residents frequent the areas which the plaintiff supervises, rather than from any purpose or course of conduct on its part calculated to benefit nonresidents in particular.

Moreover members of the public other than those who directly utilize the facilities provided by the plaintiff benefit from its activities. See *Greater Lowell Girl Scout Council* v. *Pelham*, 100 N. H. 24, *supra*. To the extent that those activities relate to the mountains and recreational areas of New Hampshire, the residents of New Hampshire are beneficiaries even though neither members of the club nor active participants in the activities which it sponsors.

The plaintiff was not disqualified from exemption by reason of the proviso added to the statute by Laws 1955, c. 157, s. 1.

The defendant further suggests that because of the provisions of RSA 72:27, effective since 1931, the tax exemption which the plaintiff seeks to establish can extend only to improvements made to its Meredith property after it qualified for the exemption by incorporation here in 1935. Laws 1935, c. 273. See *Franciscan Fathers* v. *Pittsfield*, 97 N. H. 396, 399. The plaintiff was first "incorporated or organized" in New Hampshire in 1935. By special act the Massachusetts corporation was "constituted a corporation within this state." Laws 1935, c. 273, *supra*. A foreign corporation was thus "domesticated" here. 17 Fletcher, Cyc. of Corporations, s. 8302, *p.* 38. See *Prop'rs of Cornish Bridge* v. *Fitts*, 79 N. H. 253; *Horne* v. *Railroad*, 62 N. H. 454. The corporation thus incorporated "within this state" had owned Three Mile Island in Meredith long before 1931. Hence the real estate in question was not "real estate hereafter acquired" by a domestic corporation within the meaning of Laws 1931, c. 148, s. 1 (RSA 72:27, *supra*).

The answer to the first question transferred is in the affirmative: the plaintiff is a charitable society or organization within the meaning of RSA 72:23, as amended, for each of the three years in question.

Because of differences in the requirements imposed by the statute before and after the 1957 amendment, in answering the second question (whether the plaintiff is entitled to exemption from taxes assessed against it by the town of Meredith for the years in question), it is desirable to first consider the status of the plaintiff's tax liability for the years 1956 and 1957. No reliance is placed upon the special act of 1903 (Laws 1903, c. 248) presumably because it was repealed by the general act of 1913. See *Trustees &c. Academy* v. *Exeter*, 90 N. H. 472. In order that property should qualify for exemption, the effective statute for 1956 and 1957 required among other things that any real estate should be "owned and occupied by [the plaintiff or its] officers . . . for the purposes for which [it is] established"; and that none of the income from its business should be used for other purposes. RSA 72:23, as amended by Laws 1955, c. 157; *Greater Lowell Girl Scout Council* v. *Pelham*, 100 N. H. 24.

It is agreed that the income from Three Mile Island is utilized for the operation and maintenance of the property, and the profit "to carry out the stated objectives for which the Club was formed."

The question then becomes one of whether during the years in question the property was "occupied" by the plaintiff for its charitable purposes. It is not disputed that occupation of the island and its structures during all of the years in question was by the plaintiff, in the person of its members. Under the terms upon which these accommodations were made available, only members, and guests of members in the latter's right, were permitted to use them.

While it is agreed that the camp provides facilities for study of natural and other sciences and that it "is used" for these purposes by teachers and others, the extent to which advantage was taken of these opportunities by members and their guests in 1956 and 1957 docs not appear. A brochure relating to the island published by the plaintiff emphasizes its recreational facilities almost exclusively. The defendant argues that it is used "primarily as a summer camp to provide low cost vacations for members and their private guests." Whatever the opportunities afforded for activities in fulfillment of the plaintiff's charitable purposes, the agreed statement fails to sustain the plaintiff's burden of demonstrating that the island has been "occupied" in these years for such purposes and with the benefit to the public therein implied, unless by reason of the fact that the profits derived from operations there have been devoted to those charitable purposes.

Under the statute in the form which it took in 1956 and 1957 however, such use of the proceeds was sufficient to qualify the property for exemption, even though the direct and immediate use made was not a charitable one. As the statutory language was interpreted in *Hedding &c. Association* v. *Epping,* 88 N. H. 321, 323, it exempts "property occupied by an institution but not directly used in the course and conduct of its ultimate objects." "If 'the income or profits of the business' of the institution are 'used or appropriated' for those objects (P. L., c. 60, s. 22) the exemption applies to the property employed in the business." *Id.* What the statute then required was that: "In the end all that it owns and all that it does in a business way [should be] a means for the furtherance of its charitable objectives." *Id., p.* 325. See also, *Young Women's Christian Ass'n* v. *Portsmouth,* 89 N. H. 40, *supra,* 44-45. This construction of the statute was thought to arise in part from the fact that all personal property was exempted by the statute, and hence that it was within the legislative contemplation that real estate similarly "held . . . for investment" should likewise

be exempt. *Hedding &c. Association* v. *Epping, supra,* 323, 324.

The same language appearing in the statute effective in 1956 and 1957 should receive the same construction now. Hence as to the years 1956 and 1957, the second question transferred is answered in the affirmative: the plaintiff is entitled to be exempted from tax upon its personal and real property in Meredith for those taxable years.

The 1957 amendment restated the previous institutional exemption statute in its entirety. Laws 1957, *c.* 202, *s.* 2. See note, RSA 72:23 a (supp). However it did more than simply restate the former exemption. The provision added in 1955 to RSA 72:23 (Laws 1955, *c.* 157, *supra*) denying exemption if the principal purpose of the owner was to benefit nonresidents was stricken from the statute, although the original draft of the amendment would have retained it. See H. B. 142, 1957 session; Journal of the House (1957) *pp.* 675-6, 881-2. The 1957 act likewise repealed the provisions of RSA 72:27 (Laws 1931, *c.* 148, *supra*), as well as RSA 72:24-26. See RSA 72:24-27 (supp).

With respect to the buildings of seminaries of learning and other educational institutions, the new statute requires in order to qualify for exemption that buildings shall be "owned, *used* and occupied" (emphasis supplied) for their charitable purposes, and excludes from exemption lands and buildings "not used and occupied *directly* for [such] purposes." (Emphasis supplied). RSA 72:23 IV (supp). Again, subsection IV exempts "personal property used by them for [such] purposes."

Subsection V of the same section, which controls this case as to 1958 taxes, provides as to the real and personal property of charitable organizations and societies, that the exemption shall apply to such property "owned by" them "and occupied and used by them" for their charitable purposes. RSA 72:23 V.

It is thus apparent that the 1957 amendment injects into the statute the requirement that property, whether real or personal, shall be "used" for the charitable purposes of its owner, as well as "owned . . . and occupied" for that purpose, if it is to be exempt. The language of subsection IV relating to educational institutions plainly abrogates the rule laid down in *Hedding &c. Association* v. *Epping,* 88 N. H. 323, *supra,* that the property need not be directly used for the charitable purposes so long as the "final devotion of the property or its income is to those purposes." *Id.,* 324.

While subsection V of the statute does not repeat the express

exclusion of property "not used . . . directly" for charitable purposes found in subsection IV, its use of the same phraseology used by subsection IV to state the exemption, namely, "occupied and used by them for the purposes for which they are established," carries with it the coloration given to the language by subsection IV, so as to exclude property not "used . . . directly" for those purposes. See *Lewis Realty Inc.* v. *Wis. R. E. Brokers Bd.*, 6 Wis. 2d 99, 108. "The use intended as a ground of exemption was . . . a direct use for the purposes of the [institution] . . . not the indirect or remote." *Academy* v. *Exeter*, 58 N. H. 306, 307. "The sole intent of the legislature was, to grant to the plaintiffs exemption . . . on such property, and such only, as was used by them directly in carrying on their enterprise . . . . " *Id.*, 308. See also, *Association* v. *Alton*, 69 N. H. 311; *St. Mary's School* v. *Concord*, 80 N. H. 436, 438.

We conclude as to 1958 that the statutory exemption does not apply since the real and personal property on Three Mile Island was used and occupied in that year solely by members and guests, so far as appears solely for their own enjoyment and not for the plaintiff's charitable purposes. *Cf. Society of Cincinnati* v. *Exeter*, 92 N. H. 348, *supra; Franciscan Fathers* v. *Pittsfield*, 97 N. H. 396, 401. As to 1958, the second question transferred is answered in the negative; the plaintiff is not entitled to be exempted from the tax assessed by the town of Meredith for that year.

The question of the extent to which the plaintiff claimed and used elsewhere in the state its total exemption of $150,000 (RSA 72:24) for the years 1956 and 1957, as well as other issues reserved to the Trial Court, remain to be determined by it.

*Remanded.*

All concurred.

ON REHEARING. After the foregoing opinion was filed, the plaintiff moved for rehearing "on the question of exemption of [its] real estate in the Town of Meredith for the tax year 1958" and the motion was granted.

*McLane, Carleton, Graf, Greene & Brown* and *Jack B. Middleton* (*Mr. Middleton* orally), for the motion.

*John H. Ramsey* and *Upton, Sanders & Upton (Mr. Richard F. Upton* orally), opposed.

*Donald R. Bryant* for Society of Jesus of New Hampshire, as *amicus curiae.*

DUNCAN, J. The arguments advanced by the plaintiff upon rehearing center upon the interpretation of subsection V of RSA 72:23 (supp) which was enacted in 1957. Laws 1957, c. 202, s. 2. It is suggested that in interpreting the word "used" in subsection V the court has ignored familiar principles of statutory construction which would lead to a conclusion opposite to that reached; and that the 1957 amendment was intended to be little more than a reorganization of existing provisions and a codification of judicial decisions interpreting them.

We cannot accede to this view. In the light of the legislative history reviewed by the parties on rehearing, it seems evident that there was no over-all purpose to widen the sweep of the exemption laws, but rather a purpose to remove provisions which had given rise to administrative difficulties, and with respect to educational institutions in particular to substitute something more closely approaching a rule of thumb.

As previously stated, adoption in 1957 of the additional test of "use" for the charitable purposes of the owner injected a criterion not found in the statute since 1913. *St. Mary's School* v. *Concord,* 80 N. H. 436. It was however one which had played a considerable part under the statute in force from 1895 to 1913. See *Carter* v. *Whitcomb,* 74 N. H. 482, 485; *Carter* v. *Eaton,* 75 N. H. 560, 562; Laws 1913, c. 115.

In construing subsection V, the court is charged primarily with ascertaining the intention of the Legislature when it provided that real estate of charitable organizations, to qualify for exemption, must be "owned . . . occupied and used . . . for the purposes for which they are established." In subsection IV the same requirement was imposed with respect to the property of educational institutions; and by definition there set out "lands and buildings not used and occupied directly" for the specified purposes (and not previously enumerated) were expressly excluded from exemption. We do not regard this as a repeal of "the old doctrine of 'direct use,'" as suggested by *amicus curiae.*

A determination of the legislative intent is to be made upon

consideration of the act as a whole. *Costoras* v. *Noel*, 100 N. H. 81, 83. The conclusion that the word "used" was intended to convey the same meaning in subsection V which was clearly given to it in subsection IV is supported by the recognized principle that words used with plain meaning in one part of an act are to be given the same meaning in other parts of the act, unless a contrary intention is clearly shown. See *Elizabeth Arden Sales Corp.* v. *Gus Blass Co.*, 150 F. 2d 988 (8th Cir. 1945); *Randall's Case*, 331 Mass. 383. This principle, rather than that urged upon the court by the plaintiff, is appropriately to be followed in giving effect to what the Legislature must be taken to have intended by the 1957 revision. In reaching this conclusion we express no view concerning the interpretation of subsection III of section 23, as amended, which is not here in issue.

The order upon rehearing is

*Former result affirmed.*

All concurred.