LETTS, Judge.
The trial court ruled that certain on-campus faculty housing at a not-for-profit, coeducational, church-related school, was not exempt from ad valorem taxes. The school appeals and we reverse.
Until 1986, all the faculty housing was granted total exemption by the property appraiser under section 196.198, Florida Statutes (1987). Commencing in 1986, twenty-three out of forty-one of the faculty residences were declared to be taxable. (The land on which the twenty-three residences stand continues to be exempt.)
Simply stated, the assessor maintains that in order to qualify for exemption, the statute requires that the property in question be “used exclusively for educational purposes” (emphasis supplied) and that the chapter defines “exclusive use of property” as “used one hundred percent for exempt purposes.” See § 196.012(2), Fla.Stat. *208 However, we note that the 1988 supplement to the statute, effective June 16, 1988, has changed the language of the definition from “used one hundred percent” to “use of property solely for exempt purposes.” (emphasis added). Nobody disputes the fact that the twenty-three faculty members and their families lead some semblance of private lives behind their on-campus residential doors which the appraiser claims results in a failure to satisfy the one hundred percent requirement. However, the school cites three cases out of the Second District which interpret the language of the statute in a “broader sense.”
In Walden v. Berkeley Preparatory School, Inc., 337 So.2d 1029 (Fla. 2d DCA 1976), cert. denied, 344 So.2d 327 (Fla.1977), the Second District found that a headmaster’s residence some distance from the campus, nevertheless, came within the provision of chapter 196 in a “broader sense.” See also Walden v. University of Tampa, Inc., 304 So.2d 134 (Fla. 2d DCA 1974), cert. denied, 315 So.2d 476 (Fla.1975); Walden v. University of South Florida Foundation, 328 So.2d 460 (Fla. 2d DCA), cert. denied, 336 So.2d 605 (Fla.1976).
In Berkeley, the court noted:
The property was purchased by the school for use as a headmaster’s residence, and the headmaster is required to live there. But, the property is also used for cookouts and picnics for student groups, teas for students and parents, faculty entertainment, individual counseling of students and parents, entertainment and housing of school guests, and like matters. And, while the premises are not used continually for such purposes, they are available at all times for such uses.
The record indicates a belief on the part of school authorities that such activities foster a personal relationship which is an important factor in its educational process. The educational need to use the residence for this purpose is not controverted in the record.
Id. at 1030.
Similarly, the record, sub judice, reveals that all of the faculty on-campus homes are used for the same purposes as detailed above. Moreover, in addition to the facts enunciated in Berkeley, some twenty percent of the students, in the case before us, board at the school and are in need of twenty-four hour supervision. The school literature stresses the desirability of the faculty residing on-campus for security reasons, emotional needs associated with homesickness and other general welfare items. Classes' are regularly taught in these homes. The school derives no income from them and only members of the faculty can live there. Indeed, many of the faculty employment contracts require them to live there. Furthermore, unlike Berkeley, where the home in question was off-campus, the homes in the instant case are all on campus. Finally, the presence of faculty housing on this campus is one of the factors which supports the school’s continued accreditation as a boarding facility.
At oral argument our attention was drawn to the fact that university, fraternity and sorority houses are exempt from taxation, citing Gamma Phi Chapter of Sigma Chi Building Fund Corporation v. Dade County, 199 So.2d 717 (Fla.1967). As we read it, that is not the actual holding of Sigma Chi, but in the opinion, the court makes it clear that fraternities at universities are exempt.
The Sigma Chi case raises another distinction. In 1967, when it was written, Florida had a statute that specifically exempted university and college fraternities “used solely as their clubhouse or home.” See § 192.06(8) Fla.Stat. That same statute became section 196.191 in 1969, was repealed in 1971 and replaced by section 196.198 which exempted fraternities and sororities “as being essential to the educational process.” This 1971 version was already enacted at the time Berkeley’s “broader sense” opinion was issued in 1976. Furthermore, at the time of Berkeley, the one hundred percent use requirement in section 196.012(2) was already in place by reason of the 1971 amendment.
In the case at bar, the appraiser concedes the viability of the “broader sense” doctrine as it pertains to the headmaster’s *209 house, but rejects it as to the assistant headmaster’s house. Yet, the record is clear that the assistant headmaster’s school-related use, associated with his residence, parallels or exceeds the school-related use of the headmaster’s house. Since the “use” is critical, we fail to appreciate the appraiser’s distinction except for command status. Command status should not be the criterion and, indeed, the appraiser’s office appears to agree because it has even exempted the maintenance man’s residence.
There does not appear to be any other Florida case directly on point, but there are some out-of-state cases, of which we approve, which exempt faculty living-quarters and hold that they are exclusively used for educational purposes. See, e.g., Order of St. Benedict v. Gordon, 417 A.2d 881 (R.I.1980); St. Paul’s School v. City of Concord, 117 N.H. 243, 372 A.2d 269 (1977).
In sum, from the facts sub judice, we conclude that the primary purpose of having faculty members live on this campus is so that they can “participate effectively in the educational scheme of the school and not merely to have a place of residence.” St. Paul’s, 372 A.2d at 275. As to the appraiser’s argument that the nonexempt-ed residences are not used one hundred percent for educational purposes, that is severely weakened by the fact that the appraiser has, in fact, exempted thirteen other faculty residences. This exempted baker’s dozen is explained away as being “integrated into the student housing.” However, at least two residences exempted are not so integrated, and in any event, all thirteen inescapably have the same residential quality, where private family life goes on within, contemporaneously with school activities. If one hundred percent is supposed to be the magic, all-or-nothing-at-all, then by the appraiser’s same logic, none of the faculty on-campus residences would qualify. In contrast, by our logic they all do.
Finally, as to legislative intent, we are not given an explanation for the recent statutory substitution of the word “solely” in place of “one hundred percent”, enacted after the briefs were filed. See Ch. 88-102 § 1, Laws of Fla. (1988). However, we are unanimous in our conclusion that “solely” connotates something less rigid and more susceptible to compromise, than the one hundred percent rule, quite apart from the “broader sense” doctrine adopted by the case law and admitted to by the appraiser. It is true that the 1988 legislative substitution was not in existence at the time the instant controversy was before the trial court. However, the 1988 subsection is in the nature of a clarification and, therefore, pertinent. We also note the legislative’s somewhat confusing employment of the following language in subsection (1) of section 196.012:
Exempt use of property, or use of property for exempt purpose means predominant or exclusive use.... [emphasis supplied]
Elsewhere, in subsection (3), predominant is defined as use in “excess of fifty percent.” Certainly this housing is used predominantly for exempt purposes.
We also find it significant that fraternity and sorority houses have been exempted by the legislature “as being essential to the educational process.” See § 196.198, Fla. Stat. With the utmost of respect to these noble Greek letter institutions, it is unlikely that they are any more essential to the educational process than on-campus faculty housing at a nonprofit, co-educational, church-affiliated, boarding high school and we cannot believe the legislature thinks otherwise. Our comparison of fraternities vis-a-vis faculty housing is not inapt because the supreme court made a similar one in Presbyterian Homes of Synod of Florida v. Wood, 297 So.2d 556, 559 (Fla.1974).
We conclude, under the facts of the case now before us, that such faculty housing is used exclusively for educational purposes and is exempt from ad valorem taxation under chapter 196 of the Florida Statutes.
REVERSED AND REMANDED.
GLICKSTEIN, J., and POLEN, MARK E., Associate Judge, concur.